[No. D027302. Fourth Dist., Div. One. Sept. 22, 1997.]

VICTOR E. REVELES, Plaintiff and Respondent, v.
TOYOTA BY THE BAY, Defendant and Appellant.

1140

**COUNSEL**

George John Ronis for Defendant and Appellant.

Toni-Diane Donnet, Anderson & Waldron and Allen M. Gruber for Plaintiff and Respondent.

**OPINION**

**WORK, Acting P. J.**—Toyota by the Bay (Toyota) sold an irreparably damaged and hazardous used truck to Victor E. Reveles and then refused to refund his money or provide a replacement when it became inoperable within two months. In spite of clear evidence of liability, Toyota stonewalled all possibility of settlement, forcing Reveles to bring suit and engage in year-long discovery efforts, retain expert witnesses, file trial memoranda and prepare jury instructions. Only on the day of trial did Toyota finally agree to pay Reveles the amount for which he had offered to settle the case a year earlier. Because Reveles had unnecessarily incurred substantial litigation expenses in preparing for jury trial, he refused to forgo trial unless Toyota stipulated the court retain jurisdiction to determine whether he was the "prevailing party" and entitled to attorney fees and other costs. Toyota did so, but after judgment attempted to renege.

On appeal, Toyota argues that notwithstanding its stipulation, the court lacked jurisdiction to determine Reveles was a "prevailing party" where

judgment was entered by agreement, rather than after trial. We conclude Toyota waived the argument and, in any event, the motion procedure was proper even had the parties not stipulated. We also reject Toyota's argument there was no statutory basis for the court's award of attorney fees and other costs to Reveles, and hold as a matter of first impression that a service contract, sold for an additional fee in conjunction with the sale of a used vehicle, is an "express warranty" under the Song-Beverly Consumer Warranty Act (Song-Beverly Act). (Civ. Code,[1] § 1790 et seq.)

## FACTUAL AND PROCEDURAL BACKGROUND

Reveles purchased a 1989 Nissan pickup truck from Toyota in May 1992 for $10,995. The salesman assured him, "the truck was fully inspected for safety, was in perfect condition and had Nissan original parts." After negotiating the sale, Toyota informed Reveles for the first time it would be "as is." Thus, Reveles also purchased a "vehicle service agreement" for $795, providing "for the repair of mechanical failures of specified parts," including the axle assembly, steering and suspension components, for two years or twenty-four thousand miles.

While Reveles was driving the truck two months later, the left front end suddenly dropped. Toyota had the truck towed to its facility, where a mechanic told him it had " 'too much [preexisting] frame damage to repair.' " Reveles demanded a replacement or refund, but Toyota's manager refused, stating " 'the truck will be fixed.' " Although the left "upper arm bracket" was replaced, the truck was still found to be unsafe to drive due to frame cracks and very dangerous steering characteristics. Reveles surrendered the truck to his lender.[2]

After efforts to obtain a refund or replacement were rejected, Reveles sued Toyota for breach of contract, rescission and restitution, negligent and intentional misrepresentation, breach of the Consumers Legal Remedies Act (§ 1750 et seq.) and breach of the Song-Beverly Act (§ 1790 et seq.). Toyota rejected a number of offers to settle for approximately $9,300 after a year of litigation. On the morning set for trial Toyota's counsel appeared without his client, stating he was authorized to settle the case for $9,300. Because Reveles had incurred substantial attorney fees and other expenses in preparing for trial, he refused to settle without expressly reserving his right to move for their recovery from Toyota. Accordingly, the parties signed a "Stipulation and Order" including the provision, "Plaintiff will file a motion

---

[1] All statutory references are to the Civil Code unless otherwise specified.

[2] The service order from Toyota's repair department states, "Lt. side suspension damage . . . vehicle sold by [Toyota] . . . used car . . . no work done too much damage."

for attorney fees and costs for a determination of such fees and costs . . . ." On the record, the court stated Reveles "will file a motion for attorney's fees and costs for determination of such fees and costs to be heard on [February 2, 1996]." It also cautioned, "so that we're all clear on this, the hearing will determine *the liability for and the amount of attorney's fees*. Obviously, if there isn't any liability, that's a whole different issue, but . . . those will be the subjects of the hearing. [¶] The Court contemplates that there will be declarations filed by the parties as a part of the motion and/or response to the motion."

Reveles's motion sought $29,423.05 in attorney fees and $4,387.63 in other costs, arguing he was the "prevailing party" under Code of Civil Procedure section 1032, subdivision (a)(4), and sections 1717, subdivision (a), 1780, subdivision (d) (Consumers Legal Remedies Act), and 1794, subdivision (d) (Song-Beverly Act). The motion included a declaration of Kurt Klaser, the truck's previous owner, declaring when he purchased the truck used, it "was lifted quite high and the front end . . . bounced a lot." Later, when Klaser was driving the truck, "the front end began bouncing heavily and control . . . was lost, resulting in an accident. It felt as though the front end of the truck was actually lifting off the ground, causing [it] to spin a couple of times and slide into the on-ramp guard rail." Klaser was uncomfortable driving the truck after its repair, so he traded it for another vehicle at Toyota shortly before Reveles purchased it.

Reveles's motion also included the declaration of Forrest Folck, a "triple master mechanic" whose inspection revealed: "The truck was unstable. It's [*sic*] steering overreacted. Maintaining a straight line was very difficult. A slight movement of the steering wheel caused the truck to pitch." Further, "[i]t was evident that past off road/physical abuse had caused the frame to be torn and separated. There was evidence of welding of a very poor quality where lifts and shocks had been in place"; "[t]he control arms . . . were not Nissan and were incorrectly set, causing the camber and steering character-istics of the truck to be [adversely] affected. . . ."; "[t]he frame had several cracks in the front frame cross member area," and the "whole front frame is breaking up. This is allowing excessive frame flex and is again contributing to the steering instability of the truck." Folck cautioned "the truck was unsafe to drive and a potential threat to life if it remained on the road." Greg Van Slyke, an automobile appraiser, declared the truck was worth only $3,608.10 when Toyota sold it to Reveles, due to frame and suspension damage caused by the prior accident.

Despite the parties' stipulation, Toyota's principal argument in opposition was that the court could not deem Reveles the "prevailing party" because he

had not obtained a judgment after trial. In support, Toyota filed only the declaration of its attorney, consisting of argument but no facts.

During the hearing on the motion, the court stated: ". . . This matter . . . comes up in a peculiar setting because we didn't have a trial, we didn't have a judgment, and we had a stipulation for settlement. . . .

". . . . . . . . . . . . . . . . . . . . . . . .

"When we were going back and forth and trying to avoid personalities, let's say, in resolution of the thing, I'm not sure whether we fully communicated everything that needed to be communicated, but my interpretation of what happened when we settled this case was that at some hearing, which we had then subsequently set up, which is today, . . . we would litigate, if you will, the issue of . . . whether one side or the other would be entitled to attorney's fees and costs and that a part of that determination would be who was most likely to have prevailed in the lawsuit.

". . . [I]n reading over the papers, . . . I'm not sure that both parties interpret it that way. It appears that the Plaintiff did, and the Plaintiff put in declarations and so forth and points and authorities to support [his] point of view that . . . [he] . . . would have been entitled to a judgment, and therefore, [he] should get costs.

". . . But the Defendant's argument is not . . . whether [plaintiff] would prevail, but whether there was a judgment. Therefore, since there was no judgment, the Plaintiff isn't entitled to costs.

". . . And . . . that wasn't my understanding when that document was executed. The document itself makes it clear that we were going to have a hearing on attorney's fees and costs. As I said in that context, the discussion that we were having, I felt that I made it clear—in fact, I remember saying, well, I don't know how we're going to do this because we almost have to litigate this case in order to resolve that issue of whether the Plaintiff or the Defendant [is] entitled to attorney's fees.

"I have to apologize if it went over somebody's head or whatever, but that was what I understood and expected. We're at a point in time now where I don't feel that there's anything that can be done about it. If somebody wants to try to appeal or something, I suppose, once I make my ruling, you can do that.

"But I feel like it's pretty clear in the writing what we all thought was going to happen. Maybe not, unfortunately, necessarily all of the issues that

were going to be dealt with, but when Ms. Donnet [Reveles's counsel] filed her papers, certainly it should have been clear that she thought that the issue of who would have been entitled to judgment was one of the issues in the case. So I feel like we're by that issue."

Toyota's counsel disagreed with the court's assessment, but stated: "I'm not here to espouse the view that there is not to be reasonably *both considered and awarded* an order for attorney's fees. I mean, I think that would be disingenuous. But I do think that what we're talking about here is the quantitative aspect . . . ." Counsel promised to appeal any judgment deemed excessive, but stated: "assuming that there is a determination which we feel to be appropriate and reasonable, we'll pay the money within 10 days."

The court awarded Reveles $19,000 in attorney fees, $1,953 in expert witness fees and $1,239 in other costs, and issued the following statement of decision:

". . . Whether the hearing could be characterized as a trial is debatable since fundamental trial issues did have to be determined—e.g., which party was entitled to a judgment so as to be characterized as 'prevailing.' It was agreed at the time of settlement that the Court would make this determination at the hearing on fees and costs.

"Because the attorney's fees are awarded pursuant to statute, they may be sought by submitting a cost bill and itemizing the fees. The amount of attorney's fees which was reasonable and necessary was determined by considering all appropriate factors, with particular regard to the amount in controversy, the complexity of the case, the amount of work done—especially that which appeared to the Court as necessary—and the result achieved.

"This Court finds that plaintiff was entitled to a judgment in its favor on the merits and should therefore be found to be the 'prevailing party' for the purpose of determining an award of attorney's fees. The fees and costs specified were reasonable and necessary.

"Attorney's fees are allowed pursuant to the Song-Beverly Consumer Warranty Act, the Consumer[s] Legal Remedies Act and for breach of contract.

"Costs are allowed under California Code of Civil Procedure, § 1033.5 and the Song-Beverly Consumer Warranty Act and the Consumer[s] Legal Remedies Act."

Toyota appealed to the appellate department of the superior court, arguing the "prevailing party" determination could not be made absent a full trial and, in any event, Reveles had no entitlement to attorney fees because, among other things, the Song-Beverly Act applies only to new consumer goods. Reveles also appealed, claiming the municipal court abused its discretion in reducing his attorney fees request. The court reversed the municipal court, simply stating in an order containing none of its analysis, it found "no statutory basis for awarding attorney's fees." The court also issued an order certifying transfer to this court, "to settle an important question of law, i.e., whether the sale of a used car which includes the additional sale of an extended service contract is a transaction which falls within the provisions of the Song-Beverly Consumer Warranty Act, Civil Code [§ ]1795.5." We answer that question and also exercise our discretion to review other issues. (*People* v. *Dupuis* (1992) 7 Cal.App.4th 696, 700 [8 Cal.Rptr.2d 923]; *Kaiser Foundation Health Plan, Inc.* v. *Aguiluz* (1996) 47 Cal.App.4th 302, 308 [54 Cal.Rptr.2d 665].)

*Reveles's Entitlement to Costs as the Prevailing Party Was Appropriate for Determination in a Motion Regardless of the Parties' Stipulation*

■ Toyota concedes, and it is clear from the record, it expressly agreed the court would determine, from declarations submitted by the parties, whether Reveles was the "prevailing party" entitled to recovery of litigation costs. Nonetheless, in an attempt to avoid the consequences, Toyota argues the court could not determine "who would or should have 'prevailed' simply for the sake of granting fees without having a full trial on the merits of the case." In other words, Toyota claims its agreement to the postsettlement motion procedure was void as a matter of law. Not so. A party may waive substantive rights, including the right to have an issue determined in a jury or court trial. (Code Civ. Proc., § 631, subds. (a)(2) & (3); *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396, 407-408 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109]; *Linsk* v. *Linsk* (1969) 70 Cal.2d 272, 278-279 [74 Cal.Rptr. 544, 449 P.2d 760].) Toyota was bound by its stipulation and, if it had a defense to Reveles's allegations, it should have submitted declarations. At any rate, as we explain, Reveles's motion was proper regardless of the parties' express reservation of the cost issue.

Code of Civil Procedure section 1032, subdivision (b) states: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." "Prevailing party" includes "the party with a net monetary recovery . . . ." (Code Civ. Proc., § 1032, subd. (a)(4).) Code of Civil Procedure section 1033.5 lists numerous items allowable under section 1032, including attorney fees where

authorized by contract, statute or law. (Code Civ. Proc., § 1033.5, subd. (a)(10).) Attorney fees may be fixed by noticed motion. (Code Civ. Proc., § 1033.5, subd. (c)(5).)

In arguing Reveles's motion was nonetheless improper, Toyota relies upon *International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218 [145 Cal.Rptr. 691, 577 P.2d 1031] (*Olen*), where the court rejected as too burdensome "[the suggestion] that *in pretrial dismissal* cases the court should determine whether, and to what extent, the complaint is meritorious and award attorney fees accordingly," because "to arrive at that determination would require the court to try the entire case." (*Id.* at p. 224, italics added.) The *Olen* holding was codified in section 1717, subdivision (b)(2), which provides: "Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section." The provision is inapplicable, though, because Reveles refused to dismiss this case unless Toyota promptly paid the cost award.[3] (*Kelley* v. *Bredelis* (1996) 45 Cal.App.4th 1819, 1832 [53 Cal.Rptr.2d 536]; *Lanyi* v. *Goldblum* (1986) 177 Cal.App.3d 181, 192-193 [223 Cal.Rptr. 32].)

Further, *Olen* was based on former section 1717's definition of the prevailing party as " 'the party in whose favor final judgment is rendered.' " (*Olen, supra,* 21 Cal.3d at p. 222, italics omitted.) Effective 1982, subdivision (b)(1) of section 1717 provides: "The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, *whether or not the suit proceeds to final judgment.*" (§ 1717, subd. (b)(1), italics added.) Thus, where there is no dismissal, a settling party may move for contractually based attorney fees under section 1717 unless the right to them was expressly or impliedly waived in the settlement agreement. (*Lanyi* v. *Goldblum, supra,* 177 Cal.App.3d at pp. 192-193; § 1717, subd. (a).)

Additionally, even pretrial dismissal does not preclude an award of attorney fees and other costs sought under statutes other than section 1717. For instance, in *Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668 [186 Cal.Rptr. 589, 652 P.2d 437], plaintiff taxpayers promised to dismiss their case "on substantial performance of defendants' promise to establish four transit systems." (*Id.* at p. 671.) The court held that notwithstanding the settlement agreement, which was silent as to attorney fees and

[3]We take judicial notice of the municipal court's February 2, 1996, minutes. (Evid. Code, § 452.) It is also implicit the parties understood that subdivision (b)(2) of section 1717 would not preclude Reveles's fee motion even if he had voluntarily dismissed the action after receiving Toyota's settlement payment. (See *Honey Baked Hams, Inc.* v. *Dickens* (1995) 37 Cal.App.4th 421, 426 [43 Cal.Rptr.2d 595] [subdivision (b)(2) of section 1717 does not prohibit parties from negotiating right to postdismissal fee motion].)

costs, the court retained jurisdiction to determine whether plaintiffs were "successful" parties under Code of Civil Procedure section 1021.5, which codifies the private attorney general doctrine. (*Folsom v. Butte County Assn. of Governments, supra,* 32 Cal.3d at pp. 681, 686, fn. 34.)[4] Here, of course, there was no waiver but an express reservation of the issue. Under any analysis, the court was authorized to determine Reveles's entitlement to litigation expenses, under each of the alleged statutory grounds, in a post-settlement motion.

### Reveles Is Entitled to Costs Under Code of Civil Procedure Section 1032

■ Unless another statute expressly precludes recovery, under Code of Civil Procedure section 1032, subdivision (b), the court must award reasonable and reasonably necessary costs to a party who has obtained a "net monetary recovery." (*Foothill Properties* v. *Lyon/Copley Corona Associates* (1996) 46 Cal.App.4th 1542, 1553 [54 Cal.Rptr.2d 488]; Code Civ. Proc., §§ 1032, subd. (a)(4), 1033.5, subd. (c)(2) & (3).) We are aware of no statute precluding recovery here, and it cannot be seriously argued that Reveles, who obtained $9,300 from Toyota, did not obtain a "net monetary recovery." Contrary to Toyota's argument, it is of no import that Reveles was required to pay $2,337 of the settlement to his lender.

Thus, even if there was no statutory basis for attorney fees, as the superior court found, Reveles's entitlement to the municipal court's award of $1,239 for filing, service, deposition and exhibit costs is evident. (Code Civ. Proc., § 1033.5, subd. (a)(1), (3), (4) & (12); *Harris* v. *Northwestern National Ins. Co.* (1992) 6 Cal.App.4th 1061, 1068 [8 Cal.Rptr.2d 234].) While Toyota argues generally that Reveles's request was excessive, it points to nothing indicating these specific costs were not reasonably incurred, and they appear appropriate.

### Reveles Is Entitled to Costs, Including Attorney Fees, Under Other Statutes

### Section 1717

Section 1717 provides in relevant part: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs . . .

---

[4]See also *Rappenecker* v. *Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 263 [155 Cal.Rptr. 516] ("Defendant has failed to provide any persuasive showing of legislative intent to exclude costs in compromise settlements."); *Crib Retaining Walls, Inc.* v. *NBS/Lowry, Inc.* (1996) 47 Cal.App.4th 886, 890-891 [54 Cal.Rptr.2d 850] (In conjunction with costs awarded under Song-Beverly Act, we stated, ". . . *Rappenecker* cautions against engrafting exceptions onto the clear language of [Code of Civil Procedure] section 1032, even if the judgment results from a settlement."); *Elster* v. *Friedman* (1989) 211 Cal.App.3d 1439, 1443-1444 [260 Cal.Rptr. 148] (" '[A] plaintiff should not be denied attorneys' fees because resolution in the plaintiff's favor was reached by settlement. . . .' [Citation.]").

shall be awarded . . . to one of the parties . . . , then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] . . . [¶] Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit. [¶] . . . [¶] (b)(1) . . . [T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section." The provision was intended to create a reciprocal right to attorney fees when the contract, as here, provided the right to only one party.[5] (*Ryder* v. *Peterson* (1996) 51 Cal.App.4th 1056, 1058 [59 Cal.Rptr.2d 562].)

Reveles sought rescission and restitution based on Toyota's misrepresentation of the truck's condition and resulting failure of consideration.[6] A party may rescind a contract if, among other things, his or her consent was given by mistake or obtained through fraud, or there has been a material failure of consideration. (§ 1689, subd. (b)(1) & (2).) "Thus, when a party has been induced by fraud or mistake to enter into a contract, the party may have the contract set aside and seek restitution of those benefits lost to him by the transaction. [Citation.]" (*Merced County Mut. Fire Ins. Co.* v. *State of California* (1991) 233 Cal.App.3d 765, 771 [284 Cal.Rptr. 680].) It has long been recognized that a used vehicle buyer may rescind the sales contract where the seller fraudulently misrepresented the vehicle's condition, causing a failure of consideration. (*Pennell* v. *Stanley W. Smith, Inc.* (1928) 204 Cal. 540, 542 [269 P. 171].) Even an "as is" sale disclaimer "does not necessarily confer on the seller a general immunity from liability for fraud. It is fairly well established in respect to sales of personal property that such a provision 'does not prevent fraudulent representations relied on by the buyer from constituting fraud which invalidates the contract or is a ground for damages.' [Citations.]" (*Lingsch* v. *Savage* (1963) 213 Cal.App.2d 729, 740-741 [29 Cal.Rptr. 201, 8 A.L.R.3d 537].)

Reveles produced uncontroverted evidence Toyota induced his purchase of the truck by assuring him it was " 'was fully inspected for safety, was in perfect condition and had Nissan original parts.' " When the truck broke down a few weeks later, however, Toyota's own service department readily discovered it had irreparable frame damage, and Reveles's mechanic

---

[5] The sales contract contains an attorney fees clause in favor of Toyota, stating: "You agree that upon your default we shall be entitled to recover from you our reasonable collection costs, including but not limited to an attorney's fee."

[6] An action for rescission is an "action on a contract" for purposes of an award of attorney fees and other costs under section 1717. (*Hastings* v. *Matlock* (1985) 171 Cal.App.3d 826, 840-841 [217 Cal.Rptr. 856].)

found, "[i]t was evident that past off road/physical abuse had caused the frame to be torn and separated," and "[t]he control arms . . . were not Nissan." Far from being safe and in "perfect condition," the truck was irreparably damaged and unsafe to drive at the time Toyota sold it to Reveles. Obviously, Toyota either fabricated the presale inspection altogether, or its actual results; either way, Toyota misled Reveles to his considerable detriment.

■ The court's determination a party prevailed on a contract action is an exercise of discretion which should not be disturbed on appeal absent a clear showing of abuse. (*McLarand, Vasquez & Partners, Inc.* v. *Downey Savings & Loan Assn.* (1991) 231 Cal.App.3d 1450, 1456 [282 Cal.Rptr. 828].) ■ Viewed in conjunction with Toyota's $9,300 settlement payment, Reveles's undisputed evidence fully supports the court's finding he "recovered a greater relief in the action on the contract . . . ."[7] (§ 1717, subd. (b)(1).) Reveles is therefore entitled as a matter of right to reasonable costs under section 1717, subdivision (a), including attorney fees.

We also reject Toyota's contention the attorney fees award was excessive because it was substantially higher than Reveles's recovery. ■ " 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' [Citation.]" (*Montgomery* v. *Bio-Med Specialties, Inc.* (1986) 183 Cal.App.3d 1292, 1298 [228 Cal.Rptr. 709].) " 'The only basis for reversal would be that the amount was so large (or so small) as to "shock the conscience" and suggest that passion and prejudice influenced the determination. . . .' [Citation.]" (*Shannon* v. *Northern Counties Title Ins. Co.* (1969) 270 Cal.App.2d 686, 688-689 [76 Cal.Rptr. 7].)

■ Reveles's counsel submitted a detailed declaration explaining the services rendered in each billing period, along with time slips. After considering the matter, the court reduced the requested fees of $29,423.05 to $19,000, and we find no abuse of discretion in the award.[8] Additionally, Reveles is entitled to reasonable attorney fees on appeal under section 1717, as well as under additional statutory bases discussed below. (*MST Farms* v. *C.G. 1464* (1988) 204 Cal.App.3d 304, 308 [251 Cal.Rptr. 72]; *Morcos* v. *Board of Retirement* (1990) 51 Cal.3d 924, 928-930 [275 Cal.Rptr. 187, 800 P.2d 543]; *Imperial Bank* v. *Pim Electric, Inc.* (1995) 33 Cal.App.4th 540,

---

[7]Section 1717, subdivision (b)(1)'s definition of "prevailing party," rather than the definition in Code of Civil Procedure section 1032, subdivision (a)(4), controls. The result is identical here, however, regardless of the definition used. (*Foothill Properties* v. *Lyon/Copley Corona Associates, supra,* 46 Cal.App.4th at p. 1554.)

[8]We thus also reject Reveles's argument the award was inadequate.

557 [39 Cal.Rptr.2d 432] ["Statutory authorization for the recovery of attorney fees incurred in trial court proceedings necessarily includes attorney fees incurred on appeal unless the statute specifically provides otherwise."].)

### Consumers Legal Remedies Act

■ The Consumers Legal Remedies Act, enacted in 1970, "established a nonexclusive statutory remedy for 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer. . . .' [Citation.]" (*Gallin* v. *Superior Court* (1991) 230 Cal.App.3d 541, 545-546 [281 Cal.Rptr. 304].) Section 1780, subdivision (d) provides in part: "The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to [the Consumers Legal Remedies Act]." Because the statute does not define "prevailing party," we use the general definition of Code of Civil Procedure section 1032 (*Adler* v. *Vaicius* (1993) 21 Cal.App.4th 1770, 1777 [27 Cal.Rptr.2d 32]), so Reveles is entitled to fees if he obtained a "net monetary recovery" on his Consumers Legal Remedies Act claim. (Code Civ. Proc., § 1032, subd. (a)(4).)

Reveles alleged Toyota violated the act by "[r]epresenting that goods . . . have . . . characteristics, . . . [or] uses . . . which they do not have . . . ."; "[r]epresenting that goods are original . . . if they have deteriorated unreasonably or are altered, reconditioned, reclaimed, used, or secondhand"; and "[r]epresenting that goods . . . are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (§ 1770, subd. (a)(5), (6) & (7).) Reveles produced substantial and uncontroverted evidence, summarized above, that Toyota's conduct fell within the proscribed activities. Other than erroneously arguing the court could not determine whether Reveles prevailed without a full trial, Toyota suggests no reason why the evidence does not support a finding of liability. Again, along with Toyota's $9,300 payment, the evidence amply supports the court's finding he prevailed on the Consumers Legal Remedies Act claim. Thus, Reveles was also entitled as a matter of right to costs, including attorney fees, under section 1780, subdivision (d).

### Song-Beverly Act

The Song-Beverly Act regulates express warranties, including service contracts, covering "consumer goods." "Enacted in 1970 to improve the lot of consumers who purchase defective products, the Act contains substantive regulations of warranty terms, disclosure requirements and strengthened consumer remedies. [Citation.]" (*National R.V., Inc.* v. *Foreman* (1995) 34 Cal.App.4th 1072, 1077 [40 Cal.Rptr.2d 672].) ■ Toyota contends

the Song-Beverly Act is inapplicable because Reveles's truck was used. It relies upon section 1791, subdivision (a), which defines "consumer goods" as, "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables. . . ." In response, Reveles argues his "vehicle service agreement" is an "express warranty" under section 1795.5, which provides in part: "Notwithstanding the provisions of subdivision (a) of Section 1791 defining consumer goods to mean 'new' goods, the obligation of a distributor or retail seller of used consumer goods in a sale in which an express warranty is given shall be the same as that imposed on manufacturers under this chapter." The issue presented appears to be one of first impression.[9]

■ "[T]he fundamental rules of statutory construction are well settled: 'First, "the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." [Citations.] Secondly, the provision must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief and absurdity. [Citations.] Significance, if possible, should be attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose, as "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." [Citation.] " 'The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction.' " [Citations.]' In determining intent, we first look to statutory language, giving effect to the plain meaning of the language. [Citation.]" (*National R.V., Inc.* v. *Foreman, supra,* 34 Cal.App.4th at p. 1077.)

"Express warranty" is defined in the Song-Beverly Act as including, "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance . . . ."[10] (§ 1791.2, subd. (a)(1).) Formal words such as "warrant" or "guarantee"

---

[9]In *Brown* v. *West Covina Toyota* (1994) 26 Cal.App.4th 555 [32 Cal.Rptr.2d 85], upon which the superior court here apparently relied, it was noted the trial court "impliedly determined that the service contract accompanying the [used vehicle] sale did not contain an applicable express warranty within the provisions of Civil Code section 1795.5." (*Id.* at pp. 560-561, fn. omitted.) The appellate court, however, expressed no opinion on the correctness of that finding. (*Id.* at p. 561, fn. 4.)

[10]In defining "express warranty," the Song-Beverly Act focuses on future performance of the goods and the warrantor's responsibilities in event of failure. In contrast, the California Uniform Commercial Code's definition of express warranty focuses on representations regarding the product made at the time of sale. Commercial Code section 2313, subdivision

are not required *to create an express warranty.* (§ 1791.2, subd. *(b).)* Reveles's vehicle service agreement is a written agreement unquestionably requiring Toyota to "preserve or maintain the utility or performance" of the used truck for the specified period. In order to qualify as an express warranty, however, the writing must also arise out of the "sale" of a consumer good, defined as "the passing of title from the seller to the buyer for a price." (§ 1791, subd. (n).) While some ambiguity exists in the statutory language regarding whether Reveles's purchase of a service contract for additional consideration qualifies as such a "sale," after reviewing provisions imposing service contract obligations on sellers, and the statutory scheme as a whole, we conclude Reveles had a remedy under the Song-Beverly Act.

As originally enacted, the Song-Beverly Act's regulation of "service contracts" was very limited. Section 1794.4 merely provided, "[n]othing in this chapter shall be construed to prevent the sale of a service contract to the buyer in addition to or in lieu of an express warranty if such contract fully and conspicuously discloses in simple and readily understood language the terms and conditions . . . ." (Added by Stats. 1970, ch. 1333, § 1, p. 2482.) Later amendments, however, substantially broadened the Song-Beverly Act's regulation of service contracts, whether ancillary to new or used product sales.

In 1978, the Song-Beverly Act was amended to include the following definition of "service contract": "[A] contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair of a consumer product." (§ 1791, former subd. (*l*), added by Stats. 1978, ch. 991, § 1, p. 3059.)[11] At the same time, section 1796.5 was added, providing that any entity "which engages in the business of providing service or repair to new or used consumer goods has a duty to the purchaser to perform those services in a good and workmanlike manner." (Added by Stats. 1978, ch. 991, § 13, p. 3066, italics added.)

In 1982, section 1794 was added, providing: "(a) Any buyer of consumer goods who is damaged by a failure *to comply with any obligation under this*

---

(1) provides in part: "Express warranties by the seller are created as follows: [¶] (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty *that the goods shall* conform to the affirmation or promise. [¶] (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. [¶] (c) Any sample or [floor] model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model."

[11] In 1993, after Reveles purchased his truck, the definition was amended to its current form: "[A] contract in writing to perform, *for an additional cost,* over a fixed period of time or for a specified duration, services relating to the maintenance or repair of a consumer product . . . ." (§ 1791, subd. (o), added by Stats. 1993, ch. 1265, § 12, italics added.)

chapter or under an implied or express warranty *or service contract* may bring an action for the recovery of damages and other legal and equitable relief. [¶] (b) The measure of the buyer's damages in an action under this section shall include the rights of replacement or reimbursement as set forth in subdivision (d) of Section 1793.2," as well as additional remedies.[12] (Added by Stats. 1982, ch. 385, § 2, p. 1716, as amended by Stats. 1987, ch. 1280, § 4562, italics added.)

In 1988, subdivision (b) was added to section 1794.4, stating: "Except as otherwise expressly provided in the service contract, *every service contract shall obligate the service contract seller* to provide to the buyer of the product all of the services and functional parts that may be necessary to maintain proper operation of the entire product under normal operation and service for the duration of the service contract and without additional charge." (Added by Stats. 1988, ch. 581, § 2, p. 2136, as amended by Stats. 1993, ch. 1265, § 13, italics added.) Additionally, subdivision (c) was added to section 1794.4, requiring the service contract to contain substantial information, including a "step-by-step explanation of the procedure which the buyer should follow in order to obtain performance of any obligation under the service contract. . . ." (Added by Stats. 1988, ch. 581, § 2, p. 2137.) Subdivision (d) was also added to the statute, providing: "Subdivisions (b) and (c) of this section are applicable to service contracts on new or used home appliances and home electronic products entered into on or after July 1, 1989. *They are applicable to service contracts on all other new or used products* entered into on and after July 1, 1991." (Added by Stats. 1988, ch. 581, § 2, p. 2137, as amended by Stats. 1990, ch. 129, § 1, p. 1141, italics added.)

If "express warranty" under section 1795.5 is interpreted to exclude the vehicle service agreement, Reveles has no Song-Beverly Act remedy for Toyota's breach of sections 1794.4, subdivisions (b) and (d) and 1796.5, and they would thus be rendered meaningless.[13] In enacting the Song-Beverly Act and amending it over the years, the Legislature's intent was to eliminate

---

[12]Under section 1793.2, defective goods must be serviced within 30 days. If the goods cannot be repaired "after a reasonable number of attempts," the manufacturer or retailer "shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity." (§ 1793.2, subds. (b) & (d)(1).)

[13]In making our analysis, we have also reviewed relevant portions of the legislative history of the Song-Beverly Act. (See *Home Depot, U.S.A., Inc.* v. *Contractors' State License Bd.* (1996) 41 Cal.App.4th 1592, 1602 [49 Cal.Rptr.2d 302] .) While it is not entirely clear, there is some indication that when section 1795.5 was originally enacted in 1971, the Legislature did not contemplate a service contract purchased for an additional fee would be an "express warranty" under that section. (April 14, 1971, letter from Wallace O'Connell of Partridge, O'Connell & Partridge, to Senator Alfred H. Song, pp. 4-5; April 16, 1971, letter from

misleading "sales gimmicks," and to ameliorate consumer frustration caused by inability to obtain promised repair services. The Song-Beverly Act "is manifestly a remedial measure, intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action. [Citation.]" (*Kwan* v. *Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 184 [28 Cal.Rptr.2d 371].) Accordingly, we conclude that a written service contract covering a used vehicle, under which the dealer "undertakes to preserve or maintain the utility or performance" of the vehicle, is an "express warranty" under section 1795.5, even though the consumer is required to pay additional consideration for the promised services. Thus, Reveles's Song-Beverly Act claim has merit. Certainly, it was gravely misleading for Toyota to promise repair services when the truck was damaged beyond repair at the time of sale.

Under section 1794, subdivision (d), a prevailing buyer "shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees . . . ." Again, because the statute does not define "prevailing party," we use the general definition of Code of Civil Procedure section 1032. (*Adler* v. *Vaicius, supra,* 21 Cal.App.4th at p. 1777.) Reveles, who received a "net monetary recovery," produced substantial, uncontroverted evidence Toyota breached its warranty obligations, and thus he prevailed on his Song-Beverly Act claim. Thus, in addition to the attorney fees and other costs discussed above, Reveles was entitled to the court's award of $1,953 in expert witness fees, which are allowable "expenses" under section 1794, subdivision (d). (*Jensen* v. *BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 137-138 [41 Cal.Rptr.2d 295].)

## DISPOSITION

The order vacating the municipal court order in favor of Reveles is reversed, and the case is remanded for the municipal court to determine and award reasonable statutory attorney fees to Reveles for this appeal. Reveles to recover costs on appeal.

Huffman, J., and McDonald, J., concurred.

A petition for a rehearing was denied Octber 15, 1997, and appellant's petition for review by the Supreme Court was denied December 23, 1997. Baxter, J., Chin, J., and Brown, J., were of the opinion that the petition should be granted.

---

Richard Thomsen, Senator Song's administrative assistant, to Wallace O'Connell.) However, since that time, the Song-Beverly Act's regulation of service contracts has been substantially increased, as we have discussed.