530 So.2d 1214 (1988)
Norvel WILLIAMS, Plaintiff/Appellee,
v.
CHRYSLER CORPORATION, et al., Defendant/Appellant.
No. 19702-CA.
Court of Appeal of Louisiana, Second Circuit.
June 1, 1988.
Writ Denied October 14, 1988.
*1215 Levy, James & Shealy by S. Andrew Shealy, Ruston, for plaintiff/appellee.
Mayer, Smith & Roberts by Alex S. Lyons, Shreveport, for defendant/appellant.
Before HALL, JASPER E. JONES and SEXTON, JJ.
HALL, Chief Judge.
Plaintiff Norvel Williams filed suit against defendants, Chrysler Corporation (Chrysler) and Parish-Bankston Chrysler-Plymouth-Dodge, Inc. (Parish-Bankston) requesting either replacement of the automobile he purchased from defendants or a refund of the full purchase price paid as well as all collateral costs associated with the sale pursuant to the Louisiana "Lemon Law" (LSA-R.S. 51:1941 et seq.) and in the alternative, the Louisiana redhibition statutes (LSA-C.C. Arts. 2520, et seq.). Chrysler answered, generally denied plaintiff's demands, and pled that plaintiff is only entitled to have the minor defects corrected. Parish-Bankston answered, denied plaintiff's demands, and filed a third party demand against Chrysler. The trial court rendered judgment for plaintiff against Chrysler for the purchase price, collateral costs, and finance charges less a credit for use of the automobile, plus attorney's fees, based upon the "Lemon Law". Chrysler appealed contending that (1) the trial court erred in finding that a defective paint job was a "nonconformity" within the meaning of LSA-R.S. 51:1941 et seq.; (2) the trial court erred in granting plaintiff a refund of the finance charges incurred to purchase the vehicle; and (3) the trial court erred in the amount of credit it granted Chrysler for plaintiff's use of the vehicle. For the reasons which follow, we affirm.
On September 20, 1984 plaintiff bought a 1984 Chrysler LeBaron automobile from Parish-Bankston for the sum of $11,618.50. Plaintiff's vehicle was plagued with problems and was out of service for 61½ days.
In September of 1984 Parish-Bankston attempted to repair a loose body side molding. *1216 The door was scratched during the repair and the vehicle was out of service one day.
In October of 1984 Parish-Bankston repaired the damage previously done by having the door repainted at Porter Chevrolet. The vehicle was out of service three days.
In December of 1984 the air conditioner malfunctioned due to a faulty logic module which controls various parts of the cooling system. The vehicle was out of service 15 days.
Prior to March of 1985 bubbles appeared in the painted surfaces covering 60 to 75 percent of the vehicle. Upon authorization of Chrysler's district manager, the vehicle was taken to Monroe Auto World where it was repainted unsatisfactorily. The paint exhibited sanding marks and a dull finish in some places. The vehicle was out of service 15 days.
In June of 1985 the vehicle was repainted again by Tait Dodge in Shreveport in an attempt to improve the exterior finish. Plaintiff was unsatisfied with this repair since paint was visible on the molding, the vinyl top was damaged, and trash particles were found in the paint. The vehicle was out of service 25 days.
In August of 1985 the compressor on the air conditioner was losing oil and freon. Parish-Bankston replaced a seal in the air conditioner compressor. The vehicle was out of service one half day. On a separate occasion in August of 1985, the engine was running erratically and consuming large amounts of fuel. The vehicle was satisfactorily repaired by Parish-Bankston but was out of service one day.
In September of 1985 the air conditioner compressor was again losing oil and freon. Parish-Bankston attempted to repair the problem by replacing the compressor seal again, but it became necessary to replace the entire compressor. The vehicle was out of service one day.
Since plaintiff was unsatisfied with the paint repair work the matter was subsequently submitted to the Customer Satisfaction Board. The vehicle was inspected by R.D. Deason who found sanding marks on the hood, overspray on the moldings and vinyl top, the headlight bezel tarnished, the color sanded off the molding around the vinyl top, and trash in the paint on the rear deck lid and hood. He considered the overall quality of the paint as good except for the overspray and sanding marks. Based upon Mr. Deason's inspection, the arbitration board ruled that the minor deficiencies should be corrected. Plaintiff rejected the board's decision.
Plaintiff subsequently filed suit against Chrysler and Parish-Bankston seeking rescission of the sale and return of the purchase price, costs associated with the sale and damages, or in the alternative, a new vehicle.
After trial, in an excellent written opinion, the trial court found that plaintiff's case fell squarely under LSA-R.S. 51:1941 et seq., the "Lemon Law". The court found that plaintiff proved all the elements necessary for him to be entitled to relief. The court inspected the vehicle and determined that defects or malfunctions existed in the vehicle which substantially impaired its use and/or market value. Chrysler was ordered to refund the purchase price, the payments paid at the point of sale, and all collateral costs less a reasonable allowance for use by plaintiff. Plaintiff was awarded $12,310.56 (the purchase price of $11,618.50, collateral costs of $606.44 and finance charges of $1,526.62 less $1,441.00 for plaintiffs' use of the vehicle calculated at 10.44¢ per mile for 13,800 miles), plus any additional finance charges accrued after trial. Plaintiff was also awarded $2,500 as reasonable attorneys fees.

I.
LSA-R.S. 51:1944 A as enacted by Act No. 228 of 1984 provides:
A. If after four or more attempts within the express warranty term or during a period of one year following the date of the original delivery of the motor vehicle to the consumer, whichever is the earlier, the nonconformity has not been repaired or if the vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days during the warranty period, the manufacturer *1217 shall, at its option, either replace the motor vehicle with a comparable new motor vehicle or accept return of the motor vehicle and refund the full purchase price plus any amounts paid by the consumer at the point of sale, and all collateral costs less a reasonable allowance for use to the consumer or any holder of a perfected security interest in the motor vehicle as their interest may appear. A reasonable allowance for use shall be that amount directly attributable to use by the consumer prior to his first notice of nonconformity to the manufacturer, agent or dealer and during any subsequent period when the vehicle is not out of service by reason of repair. (emphasis added)
"Nonconformity" means any specific or generic defect or malfunction, or any defect or condition which substantially impairs the use and/or market value of a motor vehicle. LSA-R.S. 51:1941(7).
Chrysler contends that plaintiff is not entitled to relief under the "Lemon Law" since a defective paint job cannot be considered a "nonconformity" within the meaning of the Act and plaintiff did not introduce evidence proving substantial impairment of the market value of the vehicle.
Plaintiff argues that the "Lemon Law" is consumer protection legislation and "nonconformity" should be given its broadest possible interpretation. He contends that the "nonconformity" substantially impaired the value of the vehicle, but in the alternative, argues that the phrase "or if the vehicle is out of service by reason of repair," is applicable regardless of the impairment of use and/or market value since his vehicle was out of service for more than thirty calendar days during the warranty period.
We recognize that the definition of "nonconformity" under the Act is ambiguous and may mean either (1) any specific or generic defect or malfunction regardless of the impairment of use and/or market value of a motor vehicle or (2) any defect or condition which substantially impairs the use and/or market value of a motor vehicle. Furthermore we recognize that LSA-R.S. 51:1944 A could be interpreted to provide relief to plaintiff upon the mere proof that his vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days during the warranty period regardless of the impairment of use and/or market value of the motor vehicle. We need not decide these issues of interpretation since we find that plaintiff proved that his motor vehicle had defects, present and unrepaired, which substantially impaired its use and/or market value and the vehicle was out of service by reason of repair for a cumulative total of thirty or more calendar days during the warranty period.
The record reveals that plaintiff's motor vehicle began exhibiting signs of defective paint within five months of delivery and the defects were brought to Chrysler's attention. Chrysler recognized the paint problems and agreed to repaint plaintiff's vehicle under warranty at two different Chrysler's dealerships on two separate occasions upon the district manager's authorization. After the second paint job proved unsatisfactory to plaintiff the matter was presented to an arbitration board which made recommendations not arbitrarily rejected by plaintiff. At trial Parish Bankston's service manager testified that plaintiff's vehicle would have a reduced market value due to its paint and repair history. He further testified that the air conditioner in plaintiff's vehicle was not designed for the hot and humid Louisiana climate.
The trial court visually inspected plaintiff's vehicle and noted the unsightly problems with the exterior of the vehicle. Photographs of the vehicle reveal numerous swirls and fading of the finish, large areas where the paint has "flaked" off, and damage to the vinyl roof. The trial court did not err when it found that plaintiff's vehicle had defects which substantially impaired its use and/or market value.
Chrysler contends that the vehicle could easily be touched up or repaired for between $200$250. Chrysler has already been given adequate time to repair the vehicle and has done so unsuccessfully. Plaintiff's vehicle was out of service at least forty days for repainting alone. Allowing Chrysler one more attempt to repair *1218 plaintiff's vehicle would thwart the purposes of the Act.

II.
Chrysler contends that the trial court erred in awarding plaintiff finance charges as collateral costs of the purchase. Under Section 1944 A the consumer is entitled to recover "any amounts paid by the consumer at the point of sale, and all collateral costs".
"Collateral costs" means sales tax, license fees, and registration fees and any similar governmental charges. LSA-R.S. 51:1941(1).
We agree with Chrysler that finance charges are not collateral costs within the meaning of the Act. However, we find, as did the trial court, that finance charges are amounts paid by the consumer at the point of sale. While it is true that all interest is not paid at the inception of the sale, plaintiff incurred at the point of sale an obligation to pay the finance charges directly attributable to the purchase of the vehicle.
In a redhibition action the buyer may recover from the seller finance charges incidental to the purchase, as an expense of the sale. Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (1972); Vance v. Emerson, 420 So.2d 1032 (La. App. 5th Cir.1982); Smith v. Max Thieme Chevrolet Co., 315 So.2d 82 (La.App. 2d Cir.1975); Johnson v. H.W. Parson Motors, Inc., 231 So.2d 73 (La.App. 1st Cir. 1970). Even though plaintiff is entitled to the remedies provided by the "Lemon Law" plaintiff would be entitled to finance charges under redhibition and plaintiff's rights or remedies otherwise available under any other law are not limited by the "Lemon Law". LSA-R.S. 51:1946. Plaintiff can only be made whole by awarding him the expenses associated with the purchase of the vehicle which is the purpose of the "Lemon Law".

III.
Chrysler contends that the trial court erred in only granting 10.44 cents per mile for plaintiff's use of the vehicle when the government mileage allowance is 21 cents per mile.
Plaintiff, an accountant, testified as to how he arrived at 10.44 cents per mile of use utilizing the salvage value, purchase price and total mileage a consumer expects out of his vehicle. At trial when plaintiff was questioned concerning the governmental allowance he rebutted Chrysler's contention by explaining that the governmental figure not only included depreciation but the whole cost of operating a vehicle which includes gasoline, maintenance, tires, batteries and insurance.
Chrysler did not establish any other method for calculating a reasonable allowance for plaintiff's use and the trial court did not abuse its discretion in accepting plaintiff's method.

IV.
Plaintiff in brief requests this court to increase his award for attorney's fees due to the appeal. Plaintiff did not answer or appeal the judgment below and his request cannot be considered. Welborn v. Ashy Enterprises, Inc., 504 So.2d 120 (La.App. 2d Cir.1987).

V.
Accordingly the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.