[No. G021708. Fourth Dist., Div. Three. Apr. 24, 2000.]

MARK MITCHELL et al., Plaintiffs and Appellants, v.
BLUE BIRD BODY COMPANY, Defendant and Respondent.

COUNSEL

Barnes & Farrell and Stephen G. Barnes for Plaintiffs and Appellants.

Stanley R. Jones for Defendant and Respondent.

OPINION

**RYLAARSDAM, J.**—Plaintiffs Mark and Cynthia Mitchell appeal from a judgment for defendant Blue Bird Body Company in an action brought under the Song-Beverly Consumer Warranty Act. (Civ. Code, § 1790 et seq.; all further statutory references are to the Civil Code unless otherwise noted.) The question presented is whether persons who purchase a new motor vehicle on credit can recover from the manufacturer the finance charges paid by them when exercising the remedy of restitution authorized by section 1793.2, subdivision (d)(2) (hereafter section 1793.2(d)(2)). The answer is yes, and we reverse the judgment.

FACTS

In 1991, plaintiffs purchased a new motor home built by defendant through one of its authorized dealers. The vehicle's cash price was $364,232. Plaintiffs executed a motor vehicle sale contract whereby they agreed to make a $55,000 down payment and finance the balance of the purchase price. The dealer subsequently assigned the contract to a lender. Thereafter, plaintiffs paid $143,162 under the contract, which included $25,291 allocated to principal and $117,871.11 in interest charges.

Plaintiffs sued defendant, the dealer, the lender, and others in 1995. The complaint alleged that the motor home had several "nonconformities" substantially impairing its value, and that after making several unsuccessful attempts to correct the defects, plaintiffs notified defendant of their decision to revoke acceptance of the vehicle.

Before trial, plaintiffs and defendant reached a partial settlement whereby plaintiffs returned the vehicle and defendant paid them $60,616, and paid $289,305 to the lender for the balance owed under the contract. The parties also agreed to have the court determine the sole remaining issue: Whether

plaintiffs could recover the $117,871.11 in finance charges paid by them. The court decided this issue against plaintiffs by way of a summary judgment motion.

## DISCUSSION

Section 1793.2 is part of a statutory scheme similar to laws enacted in many other states, commonly called "lemon laws." (See *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 989-990 [73 Cal.Rptr.2d 682, 953 P.2d 858]; Annot., Validity, Construction, and Effect of State Motor Vehicle Warranty Legislation (Lemon Laws) (1987) 51 A.L.R.4th 872, 876-879, § 2(a).) We must decide an issue of first impression under California's version of the lemon law: Whether the buyer of a new motor vehicle may recover paid finance charges from the manufacturer when electing the statute's refund remedy.

In part, section 1793.2 declares a "manufacturer or its representative" who "is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, . . . shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer in accordance with subparagraph (B). . . ." (§ 1793.2(d)(2).) The latter subparagraph states, "the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." (§ 1793.2(d)(2)(B).)

Plaintiffs contend the statute entitles a buyer exercising the refund remedy to recover finance charges paid because such charges constitute either part of the "actual price paid or payable," or an item of "incidental" damages. Because we conclude plaintiffs are entitled to recover paid finance charges as part of the "actual priced paid or payable," we need not consider their alternative theory of recovery.

As in any case involving statutory construction, a court must focus on effectuating the Legislature's intent when it enacted section 1793.2. (*Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th at p. 990; *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139, 1155 [67 Cal.Rptr.2d 543]; *National R.V., Inc. v. Foreman* (1995) 34 Cal.App.4th 1072, 1077 [40

Cal.Rptr.2d 672].) We must analyze the words of the statute and give them a plain and commonsense meaning. (*Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th at p. 990.) Where possible, significance should be given to each word in a statute with its parts harmonized by considering each of them in the context of the entire statutory framework. (*Reveles v. Toyota by the Bay, supra,* 57 Cal.App.4th at p. 1155; *National R. V., Inc. v. Foreman, supra,* 34 Cal.App.4th at p. 1077.)

Defendant notes section 1793.2(d)(2)(B) does not expressly list finance charges as an item of recovery. But the mere absence of a reference to this expense is not, by itself, controlling. Section 1790.4 declares "[t]he remedies provided by this chapter [the Song-Beverly Consumer Warranty Act] are cumulative and shall not be construed as restricting any remedy that is otherwise available . . . ." Cases also recognize the act is remedial legislation intended to protect consumers and should be interpreted to implement its beneficial provisions. (*Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th at p. 990; *Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 126 [41 Cal.Rptr.2d 295]; *Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 184 [28 Cal.Rptr.2d 371].)

In addition, section 1793.2(d)(2) expressly characterizes the refund remedy as "restitution." (§ 1793.2(d)(2)(B).) This remedy is intended to restore "the *status quo ante* as far as is practicable . . . ." (*Alder v. Drudis* (1947) 30 Cal.2d 372, 384 [182 P.2d 195].) Section 1692 declares that in an action to rescind a contract, "[t]he aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled . . . ." (See also *Leaf v. Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 376-377 [120 Cal.Rptr. 749] [in pre-lemon-law rescission action, motor vehicle purchasers were entitled to recover prejudgment interest on monthly payments which included both principal and finance charge].)

*Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th 985 presents an analogous situation. There the purchasers of a motor home sued the sellers under the Song-Beverly Consumer Warranty Act. They rejected the sellers' pretrial settlement offer. After trial, the court entered judgment for the sellers and awarded them costs under Code of Civil Procedure sections 1032, subdivision (b) and 998. The buyers appealed, arguing Civil Code section 1794, subdivision (d), which authorizes a prevailing buyer to recover costs but contains no comparable provision for a prevailing seller, precluded the sellers from relying on the above mentioned statutes to recover their costs.

The Supreme Court affirmed. "Because section 1032(b) grants a prevailing party the right to recover costs '[e]xcept as otherwise expressly provided

*by statute'* (italics added), we must first determine whether Civil Code section 1794(d) provides an 'express' exception. Although Civil Code section 1794(d) gives a prevailing buyer the right to recover 'costs and expenses, including attorney's fees,' the statute makes no mention of prevailing sellers. In other words, it does not *expressly* disallow recovery of costs by prevailing sellers; any suggestion that prevailing sellers are prohibited from recovering their costs is at most *implied.* Accordingly, based on the plain meaning of the words of the statutes in question, we conclude Civil Code section 1794(d) does not provide an 'express' exception to the general rule permitting a seller, as a prevailing party, to recover its costs under section 1032(b)." (*Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th at p. 991.)

Section 1793.2(d)(2)(B) does not expressly allow recovery of paid finance charges. Defendant, in effect, argues this is an implied prohibition on recovering these charges. But finding an implied prohibition on recovery of finance charges would be contrary to both the Song-Beverly Consumer Warranty Act's remedial purpose and section 1793.2(d)(2)(B)'s description of the refund remedy as restitution. A more reasonable construction is that the Legislature intended to allow a buyer to recover the entire amount actually expended for a new motor vehicle, including paid finance charges, less any of the expenses expressly excluded by the statute.

Administrative construction of section 1793.2(d)(2) supports the same conclusion. The Song-Beverly Consumer Warranty Act authorizes a motor vehicle manufacturer to create a nonbinding alternative dispute resolution procedure to resolve claims over vehicles purportedly failing to conform to express warranties. (Bus. & Prof. Code, § 472.2, subd. (a); §§ 1793.22, subds. (c), (d), 1794, subd. (e)(2).) The act requires the Department of Consumer Affairs to "[a]dopt regulations as necessary and appropriate to implement" these alternative dispute resolution procedures. (Bus. & Prof. Code, § 472.4, subd. (f).) One of the prerequisites for a qualified third party dispute resolution process is that a manufacturer shall agree to comply with the replace or refund remedy "in accordance with paragraph (2) of subdivision (d) of Section 1793.2." (§ 1793.22, subd. (d)(5).)

The regulations adopted by the department to carry out this mandate have interpreted this remedy to include finance charges. California Code of Regulations, title 16, section 3398.11 states that when an arbitration ruling orders a refund, "[t]he decision shall include . . . all reasonable repair, towing and rental car costs, any sales or use tax, license fees, registration fees, other official fees, prepayment penalties, early termination charges and *earned finance charges, if actually paid, incurred or to be incurred by the*

*consumer* (but need not include charges for which the consumer is justly responsible). . . ." (Cal. Code Regs., tit. 16, § 3398.11, subd. (c), italics added.)

■ Administrative regulations cannot alter or amend the scope of a statutorily created remedy. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1389 [241 Cal.Rptr. 67, 743 P.2d 1323].) Nonetheless, while the ultimate responsibility for interpreting a statute rests with the courts, administrative construction of a law is entitled to great weight and respect. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11-12 [78 Cal.Rptr.2d 1, 960 P.2d 1031]; *Dyna-Med, Inc. v. Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1388.) ■ Given the statutory language and the act's remedial purpose, the Department of Consumer Affairs properly construed section 1793.2(d)(2)(B) to allow a buyer seeking the refund remedy to recover paid finance charges.

Although there are no California decisions on point, a court in at least one other state has held that a buyer is entitled to recover finance charges even though that state's motor vehicle warranty act did not expressly mention finance charges as a recoverable item. In *Williams v. Chrysler Corporation* (La.Ct.App. 1988) 530 So.2d 1214 [530 So.2d 1214], the court construed Louisiana's lemon law, which allows a buyer to recover "the full purchase price plus any amounts paid by the consumer at the point of sale . . . ." (La. Rev. Stat. Ann. § 51:1944 A.) The appellate court affirmed the trial court's award of finance charges to the buyer under the statute. "[W]e find, as did the trial court, that finance charges are amounts paid by the consumer at the point of sale. While it is true that all interest is not paid at the inception of the sale, plaintiff incurred at the point of sale an obligation to pay the finance charges directly attributable to the purchase of the vehicle." (*Williams v. Chrysler Corporation, supra,* 530 So.2d at p. 1218.) As in *Williams,* the phrase "actual price paid or payable," includes all amounts plaintiffs became legally obligated to pay when they agreed to buy the motor home, which included the finance charges.

Our construction of the statute is buttressed by two additional facts cited by plaintiffs: Motor vehicle sales generally involve financing, and there must be a passage of time before a buyer can seek the refund remedy. Under section 1793.2(d)(2) a buyer can elect restitution only after affording a manufacturer "a reasonable number of attempts" to "service or repair" the vehicle. Furthermore, when a purchaser revokes acceptance of a vehicle, section 1793.22 creates a rebuttable presumption "that a reasonable number of attempts have been made to conform a new motor vehicle to the applicable express warranties if, within one year from delivery to the buyer or

12,000 miles on the odometer of the vehicle, whichever occurs first, either (1) the same nonconformity has been subject to repair four or more times . . . and the buyer has at least once directly notified the manufacturer of the need for the repair of the nonconformity or (2) the vehicle is out of service by reason of repair of nonconformities by the manufacturer . . . for a cumulative total of more than 30 calendar days since delivery . . . ." (§ 1793.22, subd. (b).) The Legislature recently modified the presumption to apply to the first 18 months or 18,000 miles. (Stats. 1999, ch. 448, § 1.)

In this case plaintiffs executed a purchase contract, agreeing to buy the motor home on credit in 1991. They made a $55,000 down payment, and during the term of the agreement, paid an additional $143,162 in installments, of which only $25,291 applied to the principal due on the loan. Plaintiffs did not file this lawsuit until 1995. Thus, the finance charges constitute the bulk of the money plaintiffs paid to acquire the motor home.

█ Defendant relies on the principle *inclusio unius est exclusio alterius* (the expression of one thing is the exclusion of another) to support its argument. The buyer in *Murillo* advanced the same argument, and the Supreme Court found the rule inapplicable. "This rule of statutory construction, although useful at times, is no more than a rule of reasonable inference and cannot control over the plain meaning of the statutory language. █ We need not rely on inference here, for the Legislature, in plain language, has clearly and explicitly informed us of its position . . . ." (*Murillo v. Fleetwood Enterprises, Inc., supra,* 17 Cal.4th at p. 991.) The same is true in this case.

While defendant also cites section 1793.2's legislative history to support its argument, defendant concedes "interpretive commentary" on the statute's replacement or refund remedy is practically nonexistent. Defendant also cites the efforts by interested parties in an earlier legislative session to amend an ultimately unsuccessful bill to allow for the recovery of finance charges as part of the replacement or refund remedy. Since the Legislature may fail to act for several reasons, legislative inaction, standing alone, is of little assistance in construing a statute. (See *People v. King* (1993) 5 Cal.4th 59, 75, 76-77 [19 Cal.Rptr.2d 233, 851 P.2d 27].) We could just as easily conclude the Legislature's failure to act was based on a conclusion that the existing statute already allowed for recovery of finance charges.

Consequently, we conclude plaintiffs are entitled to recover the paid finance charges from defendant, and thus the trial court erred by entering judgment in its favor.

## DISPOSITION

The judgment is reversed and the matter is remanded to the superior court with directions to enter a judgment awarding plaintiffs recovery of $117,871.11. Plaintiffs shall recover their costs on appeal.

Crosby, Acting P. J., and Bedsworth, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 23, 2000.