Filed 3/30/21; Additional Certification for Partial Pub. 4/22/21 (order attached)
**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BRANDON CRAYTON, | B294528, B296241 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC654811) |
| v. | |
| FCA US LLC, | |
| Defendant and Respondent. | |

APPEALS from a judgment and postjudgment order of the Superior Court of the County of Los Angeles, Michael P. Linfield, Judge. Affirmed in part, reversed in part, and remanded with directions.

Rosner, Barry & Babbitt, Halen D. Rosner and Michelle A. Cook; Strategic Legal Practices, Payam Shahian and Jacob Cutler, for Plaintiff and Appellant.

---

[*] Certified for publication, with the exception of parts II.E., III.A.3.d. and e., and III.B.

Gibson, Dunn & Crutcher, Thomas H. Dupree, Jr. and Matt Gregory; Gates, Gonter, Guy, Proudfoot & Muench, Matthew M. Proudfoot, for Defendant and Respondent.

_____

## I.  INTRODUCTION

Plaintiff and appellant Brandon Crayton leased a new vehicle manufactured by defendant and respondent FCA US LLC that developed unrepairable defects.  He sued defendant, alleging violations of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.).[1]  The trial court entered a judgment awarding plaintiff restitution and civil penalties under the Act, followed by an order awarding him attorney fees.

On appeal from the judgment and order, plaintiff contends that the trial court erred by not including in the award restitution based on the residual value of the leased vehicle and incidental damages for the amounts he paid for annual registration renewal fees and insurance premiums.  Plaintiff also contends that the court abused its discretion by arbitrarily reducing the amount of attorney fees awarded for the legal

_____

[1]  "[P]opularly known as the 'lemon law'" (*Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966, 969 (*Kirzhner*)), it will be referred to in this opinion as the Act.  As explained below, the Act entitles buyers and lessees of new vehicles with unrepairable defects to either a replacement vehicle or restitution.  (*Ibid.*)  All further statutory references are to the Act, unless otherwise indicated.

services rendered after defendant admitted liability. We affirm in part, reverse in part, and remand with directions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A.    *Vehicle Lease*

In July 2015, plaintiff leased a new 2016 Dodge Charger from a dealership, which then assigned the lease and sold the vehicle to Ally Financial Trust (Ally). Under the terms of the lease, plaintiff paid at signing $5,055.31, a first monthly lease payment of $500.12, and sales tax, as well as title, registration, and other fees, for a total of $6,750. He also agreed to pay an additional 47 monthly lease payments of $500.12 each, for a total amount of future monthly lease payments of $23,505.64. The lease defined "[r]esidual value" as "[t]he value of the vehicle at the end of the lease" and included a purchase option under which plaintiff could "buy the vehicle at the end of the lease term for [the residual value of] $24,458.60 . . . ."

B.    *Complaint and Amended Answer Admitting Liability*

Approximately eight months after plaintiff leased the Charger, he filed an action against defendant asserting six causes of action for statutory violations, including violations of the Act. Plaintiff alleged that, soon after he leased the Charger, it developed a number of defects that defendant was unable to service or repair after a reasonable number of opportunities. Plaintiff further alleged that defendant failed to replace promptly

3

the Charger or provide restitution under sections 1793.1, subdivision (a)(2) and 1793.2, subdivision (d). And plaintiff alleged that defendant's failure to replace promptly the Charger or provide restitution was willful, entitling him to civil penalties of two times his actual damages pursuant to section 1794, subdivision (c).

Defendant initially answered the complaint and denied liability. The parties then stipulated that defendant would file an amended answer that admitted liability and offered to compensate plaintiff for the actual damages he was entitled to receive, including incidental damages but excluding the residual value of the Charger. Defendant also offered to pay plaintiff a civil penalty under the Act in the amount of two times his actual damages.

C.      *Bench Trial on Damages*

Following defendant's admission, the parties proceeded to a bench trial on damages. Prior to trial, the parties stipulated, among other things, that plaintiff was "entitled to recover his actual damages pursuant to . . . section 1793.2[, subdivision] (d)(2)(B) and 1794[, subdivision] (b) . . . [¶] . . . [and] a civil penalty of two times his actual damages pursuant to . . . section 1794[, subdivision] (c)."

Plaintiff submitted for trial his declaration authenticating a copy of his lease and a copy of a March 9, 2018, letter he received from his lessor, Ally, advising him of the amount he would be required to pay to terminate his lease early and purchase the Charger. According to Ally, plaintiff and "any co-lessee" could buy back the vehicle for $29,997.64, but if plaintiff

4

"want[ed] to arrange for someone else to buy the vehicle, [he] must first buy it from [Ally]." Plaintiff also requested judicial notice of an excerpt from a transcript of a deposition in which a representative of the California Department of Consumer Affairs confirmed that vehicle manufacturers must comply with the replacement and repurchase calculations under section 1793.2, subdivision (d)(2) and that purchase and lease transactions were treated the same for purposes of such calculations.

In his trial brief, plaintiff argued that he was entitled to recover, among other amounts, the amount necessary for defendant to reacquire the vehicle, i.e., the residual value, as restitution. According to plaintiff, "the only way [defendant could] reacquire the [v]ehicle from [p]laintiff [was] if [p]laintiff terminat[ed] the [l]ease by paying the lease payoff amount assessed by [Ally]." Plaintiff conceded that he "had no obligation to make such payment as of [the] lease signing," but argued that he thereafter became "'obligated to return the vehicle to [defendant] in order to recover restitution pursuant to [the Act].'"

In its trial brief, defendant argued that plaintiff was only entitled to recover the amounts he actually paid, or which were payable, under the lease. According to defendant, because plaintiff was not obligated to pay the residual value at the time he entered into the lease, that amount should not be included in the restitution to which he was entitled under the Act. Defendant also maintained that the title branding and disclosure requirements of the Act did not require plaintiff to acquire title to the vehicle from Ally; instead, it was defendant's obligation to acquire the vehicle by paying the residual value directly to Ally. Finally, defendant asserted that registration renewal fees,

5

insurance premiums, and amounts paid for dealer options were not recoverable as damages under the Act.

The trial court conducted a bench trial, noting at the outset that the parties had stipulated there were no factual disputes and that the case involved a legal issue: the amount of restitution to which plaintiff was entitled under the Act. After hearing argument, the court accepted defendant's position that "'actual price paid or payable by the buyer,'" as set forth in section 1793.2, subdivision (d)(2)(B), did not include the residual value of the vehicle or the amounts paid by plaintiff for registration renewal fees or insurance premiums.

D.     *Judgment*

The trial court entered a judgment that provided, as relevant to this appeal, as follows: "1.  The civil penalty provisions of the . . . Act . . . do not extend to cover the residual value of [p]laintiff's vehicle after the lease period is completed. [¶]  2.  Plaintiff may not recover any amount for registration renewal fees or insurance premiums.  [¶]  . . . [¶]  5.  The [c]ourt declined to make any ruling regarding the 'branding' of [p]laintiff's vehicle.  [¶]  6.  Defendant shall [pay off] the current loan on the vehicle and be given possession of the vehicle after it pays all sums due under this judgment.  [¶]  On the basis of these findings and [d]efendant's [a]mended [a]nswer . . .  IT IS ORDERED that defendant shall pay the amounts stated below: [¶]  a.  To plaintiff, the amount of $30,255.64 minus a mileage offset of $1,271.04 for a total of $28,984.60, with a two-time civil penalty in the amount of $57,969.20, for a total of $86,953.80;  [¶] b.  Attorneys' fees, costs and pre-judgment interest (if any), per

6

agreement of the parties, or alternatively, by way of a single noticed [m]otion, absent an agreement;  [¶]  c.  The vehicle loan payoff shall be made directly to the lender."

E.     *Motion for Attorney Fees*

On November 15, 2018, plaintiff filed a motion for an award of attorney fees and costs.  The motion included a request for attorney fees based on the billing statements of plaintiff's two law firms in the amount of $105,321.50, plus a multiplier of .35, that is, an additional $36,862, for a total fee request of $142,183.50. Defendant opposed the motion, arguing that plaintiff should not be awarded fees for services expended by his attorneys after defendant admitted liability.  Defendant calculated that the reasonable fees incurred by plaintiff prior to defendant's admission of liability was $11,688.

In his reply, plaintiff argued that the fees he incurred after defendant's admission of liability were reasonable because defendant engaged in conduct that forced him to continue to litigate damages.

At the hearing on the fee motion, the trial court found that the hourly rates of plaintiff's attorneys were reasonable and awarded him $11,688.50 in fees for the time expended by his first law firm litigating the matter through defendant's admission of liability.  In denying plaintiff the amount of attorney fees requested for the time expended after defendant admitted liability, the court concluded that plaintiff's "post-amended answer litigation conduct was neither necessary nor useful."  On the issue of whether additional restitution was recoverable, "the [c]ourt found in favor of defendant's position."  In the court's

7

view, "it would be inequitable to award [p]laintiff the more than $100,000 in attorney's fees he is requesting for arguments he consistently lost." The court therefore awarded plaintiff only $15,000 in fees for the time expended by plaintiff's two law firms after the admission of liability, to be divided equally between each firm. And the court awarded a 1.1 multiplier on the fee awards, for a total award based on the time expended by the first firm of $21,107.35 and on the time expended by the second firm of $8,250, for a total fee award of $29,357.35.

## III.  DISCUSSION

### A.  *Restitution Award*

#### 1.    The Act

"The Act allows buyers or lessees of new motor vehicles that are under warranty and have defects the manufacturer is unable to repair after a reasonable number of attempts to elect one of two remedies:  [replacement of the vehicle or restitution]." (*Kirzhner, supra*, 9 Cal.5th at p. 969.)  "Section 1793.2, subdivision (d)(2) sets forth the manufacturer's affirmative obligation to 'promptly' repurchase or replace a defective vehicle it is unable to repair, providing that if a manufacturer is 'unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make *restitution* to the buyer in accordance with subparagraph (B).'  In turn, the restitution remedy in subdivision

8

(d)(2)(B) states that 'the manufacturer shall make restitution in an amount equal to *the actual price paid or payable by the buyer*, . . . including any collateral charges . . . , *plus any incidental damages* to which the buyer is entitled under [s]ection 1794 . . . .' Finally, section 1794 is the Act's general damages provision, providing that a buyer may seek damages for a manufacturer's 'failure to comply with any obligation under this chapter or under an implied or express warranty,' the measure of which includes the restitution and replacement remedies as well as the remedies allowed by the California Uniform Commercial Code, including incidental damages." (*Id.* at pp. 971–972, italics added.)

      2.      <u>Standard of Review and Statutory Construction</u>

Defendant's contentions concerning the trial court's restitution award require us to interpret the language of the Act's replacement and restitution remedies, a legal issue governed by an independent standard of review. (*City of Alhambra v. County of Los Angeles* (2012) 55 Cal.4th 707, 718.) "To determine the Legislature's intent in interpreting these statutory provisions, '[w]e first examine the statutory language, giving it a plain and commonsense meaning.' (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 . . . [(*Concerned Communities*)].) We do not consider statutory language in isolation; instead, we examine the entire statute to construe the words in context. (*West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 608 . . . .) If the language is unambiguous, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' (*Kizer v. Hanna* (1989) 48 Cal.3d 1, 8 . . . .) 'If the statutory

language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' (*Concerned Communities,* [*supra*, 34 Cal.4th] at p. 737.) We keep in mind that the Act is "'manifestly a remedial measure, intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action.'" (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990 . . . .)" (*Kirzhner, supra*, 9 Cal.5th at p. 972.)

### 3. Residual Value

Plaintiff contends that the trial court erred by refusing to include in its restitution award the residual value of the Charger under the lease. We disagree.

#### a. Statutory Language

As we discuss above, under section 1793.2, subdivision (b)(2), if a manufacturer is unable to repair a vehicle after a reasonable number of attempts, then it must either replace the vehicle in accordance with subparagraph (A) or make *restitution* in accordance with subparagraph (B). In the case of restitution, subparagraph (B) of section 1793.2, subdivision (d)(2) provides that "the manufacturer shall make restitution *in an amount equal to the actual price paid or payable by the buyer*, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales or use tax, license fees, registration fees, and other official

fees, plus any incidental damages to which the buyer is entitled under [s]ection 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." (Italics added.)

"[T]he phrase 'actual price paid or payable,' includes all amounts [the plaintiff] became legally obligated to pay when [he] agreed to [lease] the [vehicle] . . . ." (*Mitchell v. Blue Bird Body Co.* (2020) 80 Cal.App.4th 32, 38 (*Mitchell*).) In a lease transaction, unlike a purchase, the lessee acquires the limited right to use and possess the vehicle for a specified term. In return for that limited right, a lessee makes certain payments at signing—just as plaintiff did here in the amount of $6,750—and agrees to make a specified number of future monthly payments, in this case the 47 monthly payments of $500.12 each for a total of $23,505.64. Both the payments at signing and the future monthly payments are part of the actual price payable under the lease.

But the lease here did not require plaintiff to acquire title to the vehicle at the end of the lease; instead, plaintiff acquired at signing the option to purchase the vehicle for an agreed-upon sum certain, in this case the residual value of $24,458.60. (*C. Robert Nattress & Assocs. v. Cidco* (1986) 184 Cal.App.3d 55, 66 ["'[An] option is a contract by which the owner of property invests another with the exclusive right to purchase said property at a stipulated sum within a limited or reasonable time in the future"]; see also *Langberg v. Langberg* (1972) 24 Cal.App.3d 742, 751 ["'an option agreement is a contract distinct from the contract to which the option relates, since it does not bind the optionee to perform or enter into the contract upon the terms specified in the option"].) Because plaintiff was not under

11

a legal obligation at the time of the lease signing to purchase the vehicle for the residual value, that amount is not part of the "'actual price . . . payable'" by plaintiff under section 1793.2, subdivision (d)(2). (*Mitchell, supra*, 80 Cal.App.4th at p. 38.)

Our conclusion is consistent with the Act's use of the term "restitution." As the court in *Niedermeier v. FCA US LLC* (2020) 56 Cal.App.5th 1052 (*Niedermeier*) observed: "[W]e think it significant that the Legislature chose the term 'restitution' to define the Act's refund remedy in section 1793.2, subdivision (d)(2). The [court in *Mitchell, supra*, 80 Cal.App.4th 32] interpreted that choice to mean that the Legislature intended that remedy 'to restore "the *status quo ante* as far as is practicable . . . " in other words, to place the buyer in the position he or she would have been in had he or she not purchased the defective vehicle. ([*Id.*] at p. 36.) . . . [¶] Just as the *Mitchell* court concluded that 'restitution' under the Act cannot leave a plaintiff in a worse position than when he or she purchased the vehicle, it similarly would be inimical to the concept of restitution to leave a plaintiff in a better position, rather than merely restoring her to the *status quo ante*." (*Niedermeirer, supra*, 56 Cal.App.5th at p. 1071.)

Here, awarding plaintiff the residual value of the Charger—an amount he admits he did not pay and was not obligated to pay under the terms of the lease—would leave him in a better position than he was in at the time he leased the Charger. It would therefore be contrary to the Legislature's intent in using the term restitution to describe a lessee's damages remedy under the Act.

12

### b. Equal Treatment of Lease Transactions

We are unpersuaded by plaintiff's assertion that excluding the residual value from the restitution award would result in unequal treatment of lease transactions, as compared to purchase transactions, in violation of the Act.[2] Plaintiff's equal treatment argument ignores the basic legal and economic differences between a vehicle purchase and lease transaction. In a purchase, the terms of the sales agreement, including the terms of any loan the buyer takes out to complete the transaction, define and limit the amounts the buyer becomes obligated to pay at signing. Similarly, when a vehicle is leased, the terms of the lease govern the amounts the lessee is obligated to pay in exchange for possession of the vehicle. And, under the express language of section 1793.2, a lessee's right to restitution is limited to the "actual price" the lessee became obligated to pay upon signing the lease, which in this case was the total of the future monthly payments that plaintiff agreed to pay under the lease.

---

[2] Section 1793.2, subdivision (d)(2)(D) provides that "[p]ursuant to [s]ection 1795.4, a buyer of a new motor vehicle shall also include a lessee of a new motor vehicle." Section 1795.4, subdivision (b) provides: "The lessee of goods has the same rights under this chapter against the manufacturer and any person making express warranties that the lessee would have had under this chapter if the goods had been purchased by the lessee, and the manufacturer and any person making express warranties have the same duties and obligations under this chapter with respect to the goods that such manufacturer and other person would have had under this chapter if the goods had been sold to the lessee."

Thus, contrary to plaintiff's assertion, the trial court's restitution award, which was limited to the amounts plaintiff either paid or became legally obligated to pay at signing under the terms of the lease, treated that transaction the same as a purchase in which the buyer recovers the down payment and any amounts paid or payable under the loan. The restitution award therefore did not violate the equal treatment mandate of the Act.

### c. Plaintiff's Duty to Exercise Purchase Option

Recognizing that, under the express terms of his lease, he was under no legal obligation to purchase the Charger upon termination of the lease, plaintiff maintains that he nevertheless became obligated to terminate the lease and purchase the vehicle when he sought restitution under the Act. As plaintiff interprets the branding and disclosure requirements of the Act, his right to restitution was conditioned upon his ability to provide a clean title to defendant so that it could, in turn, reacquire title to the Charger and discharge its branding and disclosure obligations.

We disagree with plaintiff's characterization of the Act's branding provisions. Under section 1793.22, subdivision (f)(1), a manufacturer that reacquires a vehicle pursuant to section 1793.2 is prohibited from reselling the vehicle unless it discloses to the prospective buyer the nature and extent of the defects in the vehicle experienced by the original buyer. And, as noted, section 1793.23, subdivision (b) specifies the disclosures the manufacturer is required to make. Neither section, however, requires a buyer or lessee seeking restitution to take any action in connection with a manufacturer's branding obligations.

14

In *Martinez v. Kia Motors America, Inc.* (2011) 193 Cal.App.4th 187 (*Martinez*), the court rejected the assertion that the Act required a buyer to maintain possession of the defective vehicle to obtain restitution under the Act. "The plain language of [sections 1793.2 and 1794] does not support [the plaintiff's] construction. Significantly, nowhere does the Act provide that the consumer must own or possess the vehicle at all times in order to avail himself or herself of these remedies. All the Act requires of the buyer is that the buyer 'deliver [the] nonconforming goods to the manufacturer's service and repair facility' for the purpose of allowing the manufacturer a reasonable number of attempts to cure the problem. (§ 1793.2, subds. (c), (d); [citation].) Once this delivery occurs and the manufacturer fails to cure the problem, the 'manufacturer shall' replace the vehicle or reimburse (make restitution to) the buyer. (§§ 1794, subd. (b), 1793.2, subd. (d)(2).) The Act says nothing about the buyer having to retain the vehicle after the manufacturer fails to comply with its obligations under its warranty and the Act. If the Legislature intended to impose such a requirement, it could have easily included language to that effect. It did not. 'We may not rewrite the section to conform to that unexpressed, supposed intent.' [Citation.]" (*Martinez, supra*, 193 Cal.App.4th at p. 194, fns. omitted.)

We agree with the reasoning of *Martinez, supra*, 193 Cal.App.4th 187, and conclude there is no provision in the Act that required plaintiff to acquire ownership of the vehicle in order to obtain restitution. If the Legislature had intended to impose such a burden on lessees seeking restitution, it would have included language expressly requiring them to purchase the vehicle prior to obtaining restitution. Contrary to plaintiff's

construction of the Act, we do not infer such a duty; instead, we read the Act as expressly imposing reacquisition, branding, and disclosure requirements solely on manufacturers who cannot repair a vehicle after a reasonable number of attempts.

### d. Judicial Estoppel

Following the entry of judgment and the filing of plaintiff's appeals, defendant took a position in opposition to a motion in a case pending in the Superior Court of Ventura County (Ventura action). Plaintiff contends that position is "totally inconsistent" with one of defendant's current positions on appeal, i.e., plaintiff is not required under the Act to purchase the Charger from Ally and transfer the title to defendant; rather, defendant can acquire the title directly from Ally. According to plaintiff, defendant should be judicially estopped in this appeal from arguing that inconsistent position.

#### i. Background

The plaintiff in the Ventura action accepted defendant's offer to settle under Code of Civil Procedure section 998 for a sum certain. A dispute subsequently arose between the parties over the interpretation of the offer. The plaintiff claimed that the offer did not include any amount that was earmarked for purchasing the leased vehicle from the lessor under the terms of the lease. Defendant insisted that the offer included the amount necessary for the plaintiff to acquire the vehicle from the lessor. The plaintiff therefore filed a motion to enforce the settlement,

16

according to his understanding of its terms, under Code of Civil Procedure section 664.6.

Defendant opposed the motion, arguing that its settlement offer must be construed to include an amount for the purchase of the leased vehicle from the lessor. According to defendant, that specific amount was included in the settlement offer to enable the plaintiff to facilitate the transfer of title to defendant so that it could, in turn, satisfy its title-branding obligations under the Act. Defendant emphasized that the plaintiff's obligation to purchase the vehicle from the lessor was *reflected in the written terms of the settlement agreement and the settlement amount,* but added that the contractual obligation was "reinforced by [defendant's] duty under [the Act] to repurchase the vehicle and provide subsequent transferees with notice of the vehicle's issues." (Italics added.)

The trial court in the Ventura action found the Code of Civil Procedure section 998 offer was "not valid" and refused to enforce the settlement.

ii. Legal Principles

"""Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.] The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. [Citation.] Application of the doctrine is discretionary.'" [Citation.] The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was

17

successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' [Citations.]" (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986–987 (*Aguilar*).)

"""'The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. [Citation.]"""" (*Aguilar, supra*, 32 Cal.4th [at p.] 986.) Consistent with these purposes, numerous decisions have made clear that judicial estoppel *is an equitable doctrine*, and its application, even where all necessary elements are present, is discretionary. [Citations.]" (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422.)

### iii. Analysis

We do not ordinarily consider arguments raised for the first time on appeal. (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3.) But even if we were to exercise our discretion to consider the merits of plaintiff's judicial estoppel argument, we would reject it because, among other things, defendant's challenged position on appeal is not totally inconsistent with its position in the Ventura action. Defendant opposed the motion to enforce a settlement in the Ventura action on the grounds that the parties mutually intended their settlement agreement to obligate the plaintiff to use part of the settlement proceeds to purchase the vehicle. Although defendant maintained that its interpretation of the agreement was consistent with its duty to reacquire the vehicle for title branding purposes under the Act, defendant did not state or imply that it

18

could not purchase the vehicle directly from the lessor. Thus, its position on appeal—that it can purchase the Charger directly from Ally, thereby obviating the need for plaintiff to purchase it—is not completely inconsistent with its position on the settlement.

Further, plaintiff cannot demonstrate that the trial court in the Ventura action adopted defendant's position or treated it as true in making its decision. The only evidence in our record on that issue—the court's minute order denying the motion—does not provide a reason for finding the Code of Civil Procedure section 998 offer invalid, much less expressly state that the trial court accepted defendant's position as true or otherwise adopted it. Thus, plaintiff has failed to establish that judicial estoppel applies on appeal.

e.     Enforceability of Judgment

Plaintiff maintains that without an award of the residual value of the Charger, the trial court's judgment is "unenforceable." According to plaintiff, as written, the judgment orders: (i) Ally, a nonparty, to breach its lease with plaintiff and to sell the Charger directly to defendant, which order the court had no jurisdiction to make; and (ii) plaintiff to breach his lease by surrendering the Charger to defendant, an order the court again had no authority to enter. Due to these purported jurisdictional issues with enforceability, plaintiff concludes that the judgment is void or voidable.

19

Plaintiff's enforceability argument misconstrues the trial court's judgment,[3] which ordered *defendant* to make restitution to plaintiff and to "[pay off] the current loan on the vehicle,"[4] orders that the court clearly had jurisdiction to enter. Contrary to plaintiff's assertion, the judgment does not purport to order Ally to do anything. And, although the judgment also provides that after defendant pays all sums due under the judgment, it shall "be given possession of the vehicle," it does not order Ally to surrender such possession or order plaintiff to breach his lease. Rather, under the judgment, plaintiff would be required to surrender the Charger to defendant *only after* defendant had paid Ally in full and acquired title, and *only after* plaintiff had been paid the amounts necessary to satisfy any remaining obligation he may have to Ally under the lease. Under those circumstances, plaintiff would receive exactly what he prayed for in his complaint, namely, restitution and civil penalties. And because he would be under no further obligations under the lease, he

---

[3] "The meaning and effect of a judgment is determined according to the rules governing the interpretation of writings generally. [Citations.] "'[T]he entire document is to be taken by its four corners and construed as a whole to effectuate the obvious intention.'" [Citations.] "'No particular part or clause in the judgment is to be seized upon and given the power to destroy the remainder if such effect can be avoided.'" [Citations.]" (*People v. Landon White Bail Bonds* (1991) 234 Cal.App.3d 66, 76.)

[4] Plaintiff drafted the judgment and apparently intended the term "current loan" to refer to the amount necessary to purchase the Charger from Ally as calculated under the terms of the lease.

20

would be free to surrender the Charger without breaching any obligation to Ally.

### 4. Registration Renewal Fees and Insurance Premiums

Plaintiff next challenges the trial court's decision not to award damages for the annual registration renewal fees and insurance premiums that he paid after defendant's statutory obligation to replace the Charger or provide restitution arose. Defendant, in its supplemental brief, agrees that under *Kirzhner, supra*, 9 Cal.5th 966, plaintiff may be entitled to amounts paid for registration renewal fees, if he incurred those fees due to defendant's failure to discharge promptly its replacement and restitution obligations under the Act.

The parties disagree, however, on whether *Kirzhner, supra*, 9 Cal.5th 966, which did not specifically address the issue, applies to insurance premiums. They also disagree on whether remand is necessary on the issue of the recovery of registration renewal fees. According to defendant, we can simply estimate the additional amount of damages for registration renewal fees to which plaintiff is entitled, amend the judgment accordingly, and then affirm without remanding for further proceedings.

In *Kirzhner*, *supra*, 9 Cal.5th 966, the court held that registration renewal and nonoperation fees may be recoverable as incidental damages pursuant to section 1793.2, subdivision (d)(2)(B) if such fees were "incurred after the manufacturer's duty to promptly provide a replacement vehicle or restitution arises." (*Kirzhner*, *supra*, 9 Cal.5th at p. 980.) "At this point in time, the fees are no longer simply a standard cost of ownership. They instead closely resemble the types of postrevocation preservation

21

and maintenance costs courts have awarded as incidental damages reasonably incurred in the care and custody of nonconforming goods pending their return to the seller." (*Ibid.*)

We thus consider whether insurance premiums incurred after a manufacturer's duties under the Act have arisen are sufficiently analogous to registration renewal fees to be recoverable under the rationale of *Kirzhner*, *supra*, 9 Cal.5th 966. According to the court in *Kirzhner*, in determining whether certain costs incurred are recoverable as incidental damages, we focus on two interrelated inquires under the California Uniform Commercial Code:  "First, [were] such [costs] incurred in the 'inspection, receipt, transportation and care and custody' of a vehicle?  [Citation.]  Second, [did] such [costs] '[result] from' or [were] they incurred 'incident to' a manufacturer's breach of warranty or other violation of the Act?  [Citation.]" (*Kirzhner*, *supra*, 9 Cal.5th at p. 979.)

As to the first inquiry, insurance premiums can be incurred for the care and custody of a vehicle if, for example, the buyer continues to maintain a policy covering property damage to the vehicle after the manufacturer's duty to replace or provide restitution has arisen.  At that point in time, "the buyer no longer has the same ownership interest in the vehicle since the manufacturer can (and should) replace or repurchase it at any moment." (*Kirzhner*, *supra*, 9 Cal.5th at p. 980.)  The buyer's continued payment of policy premiums therefore would inure, at least in part, to the manufacturer's benefit because they would operate to safeguard the vehicle from damage due to a collision, theft, vandalism, fire, and similar risks, the occurrence of which would otherwise reduce the value of the manufacturer's interest in the vehicle.  These payments thus would no longer be a

standard cost of ownership, but rather would closely resemble preservation and maintenance costs.

As to the second inquiry, premiums insuring against property damage could "result from" or be incurred "incident to" a manufacturer's breach of its replacement or restitution duties, depending on the circumstances. For example, a buyer may stop driving the vehicle—because the defects render it either inoperable or unsafe—and park it on the street or in a garage while the buyer waits for the manufacturer to replace or pay the value of the vehicle. Under such circumstances, the buyer may choose to keep in force a policy insuring the vehicle against property damage because of a continuing obligation to the lessor to return the vehicle in good condition. Those continued payments of property damage premiums—which the buyer would not have incurred if the vehicle had been timely replaced or paid off—would be the direct result of the manufacturer's breach of its duty to replace or pay value for the vehicle and would therefore be recoverable by the buyer as incidental damages. Because the restitution award in this case was rendered before a record on this causation issue could be developed, we are unable to determine, as a factual matter, whether the claimed insurance premiums "result[ed] from" defendant's breach of its duties under the Act or were otherwise "incident to" those breaches.

Accordingly, absent an agreement on appeal as to the causation issue and the amount of premiums and registration renewal fees to which plaintiff is entitled, reversal and remand

for further proceedings under *Kirzhner, supra*, 9 Cal.5th 966 is necessary.[5]

B.   *Attorney Fees*

Plaintiff additionally challenges as arbitrary the trial court's reduction of his requested attorney fees. In his reply and supplemental briefs, filed after the Supreme Court's decision in *Kirzhner, supra*, 9 Cal.5th 966, he further contends that the entire fee award must be reversed because it was based on the damages award which must be reversed for further proceedings and potential modification below.

Because we have concluded that reversal and limited remand is necessary on the issues of registration renewal fees and insurance premiums, reversal of the fee award is also required because the trial court's challenged reduction in the amount of fees claimed was based, in part, on the court's view that, following the admission of liability, plaintiff did not prevail on most of his arguments regarding the calculation of restitution

---

[5]   In his opening brief—filed before our Supreme Court's decision in *Kirzhner, supra*, 9 Cal.5th 966—plaintiff argued that if we determine he is entitled to additional damages for registration renewal fees or insurance premiums, we should also hold that he is entitled to a civil penalty of two times those additional amounts. We have made no determination as to whether plaintiff is entitled to additional damages. On remand, if the trial court awards additional amounts for incidental damages, it may also determine whether plaintiff is entitled to a corresponding increase in his civil penalties pursuant to section 1794, subdivision (c) and the parties' stipulation.

and damages.  On remand, the court should also consider whether, if the damages award increases, plaintiff would be entitled to additional attorney fees.  (See, e.g., *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 768 [reversal of a portion of damages award required reversal of attorney fee award to allow trial court to reconsider that award].)

## IV.  DISPOSITION

The parts of the judgment concerning registration renewal fees, insurance premiums, and attorney fees are reversed and remanded with directions to conduct further proceedings for the limited purpose of determining:  (1) whether plaintiff is entitled to recover incidental damages for amounts paid, if any, for registration renewal fees and insurance premiums after defendant's duty to replace the Charger or provide restitution arose; and (2) if any such incidental damages are awarded, whether (a) to assess additional civil penalties under the parties' stipulation and (b) to reconsider the amount of the attorney fees award in light of any increased total recovery.  In all other respects, the judgment is affirmed.  No costs are awarded on appeal.

CERTIFIED FOR PARTIAL PUBLICATION

KIM, J.

We concur:

RUBIN, P. J.                    BAKER, J.

26

Filed 4/22/21

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BRANDON CRAYTON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>FCA US LLC,<br><br>    Defendant and Respondent. | B294528, B296241<br><br>(Los Angeles County Super. Ct.<br> No. BC654811)<br><br><br>**ORDER FOR PARTIAL<br>   PUBLICATION** |

THE COURT:

    The opinion in the above-entitled matter filed on March 30, 2021, was certified for partial publication in the Official Reports.  Upon application of respondent and for good cause, it is ordered that the opinion now is certified for publication with the exception of parts II.E., III.A.3.d., and III.B.

_____

RUBIN, P. J.                  BAKER, J.                  KIM, J.